RYAN E. HATCH
California Bar No. 235577
ryan@ryanehatch.com
Law Office of Ryan E. Hatch, P.C.
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Telephone: 310-279-5076

DAVID A. SKEELS (*pro hac vice* forthcoming)
Texas Bar No. 24041925
dskeels@whitakerchalk.com
ENRIQUE SANCHEZ, JR. (*pro hac vice* forthcoming)
Texas Bar No. 24068961
rsanchez@whitakerchalk.com
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0500
Facsimile: (817) 878-0501

CABRACH J. CONNOR (*pro hac vice* forthcoming)
Texas Bar No. 24036390
cab@connorkudlaclee.com
JENNIFER TATUM LEE (*pro hac vice* forthcoming)
Texas Bar No. 24046950
jennifer@connorkudlaclee.com
KEVIN S. KUDLAC (*pro hac vice* forthcoming)
Texas Bar No. 00790089
kevin@connorkudlaclee.com
CONNOR KUDLAC LEE PLLC
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone:  (512) 777-1254
Facsimile:  (888) 387-1134

Attorneys for PINN, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINN, INC., | |
| Plaintiff, | CASE NO. 8:19-cv-1840 |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| GOOGLE LLC, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Pinn, Inc. files this Complaint against Google LLC for infringement of U.S. Patent No. 9,807,491 (the "'491 Patent").

Pinn hereby provides notice of additional patent claims that have been published in connection with U.S. Pat. App. Ser. No. 15/563,937. Pinn has paid all required issue fees, and, upon issuance, Plaintiff intends to amend this Complaint to assert forthcoming U.S. Patent No. 10,___,___.

## PARTIES

1.      Pinn, Inc.  is a California Corporation with its headquarters and principal place of business at 192 Technology Drive, Suite V, Irvine, California 92618.

2.      Defendant Google LLC is Delaware limited liability company with its principal place of business in Mountain View, California.  Defendant is registered to do business in California.

3.      Google may be served through its registered agent The Corporation Service Company (CSC-Lawyers Incorporating Services), 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## JURISDICTION AND VENUE

4.      Pinn brings this action for patent infringement under the patent laws of the United States, including 35 U.S.C. §§ 154, 271, 281, and 283-285.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Google is subject to the general and specific personal jurisdiction of this Court based upon its regularly conducted business in the State of California and in this judicial district, including conduct giving rise to this action.

6.      Google has committed, and continues to commit, acts of direct and indirect infringement in California, within this district, and throughout the United States, by, among other things, making, using, selling, or offering for sale in the United States, and/or importing into the United States, wireless earbud devices and systems that embody one or more of the inventions claimed in the '491 Patent.

7.      Google maintains regular and established places of business in this

district where it promotes, sells, offers for sale, uses, provides technical support for, develops, and demonstrates products that infringe the '491 Patent.

8. Google sells infringing devices and systems and provides customer service and technical support to retailers, customers, and other end users in this district.

9. Google's contacts with this forum are sufficient such that the exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1400(b).

11. Google maintains an office at 340 Main St., Venice, CA 90291.

12. For example, in other patent infringement matters, Google has admitted that they offer certain products and/or services that can be accessed by users in California and in this judicial district. Google admitted venue is proper in this judicial district in *Realtime Adaptive Streaming LLC v. Google LLC and Youtube, LLC*, Case No. 2:18-cv-03629-GW-JC (C.D. Cal.) (*see* Dkt. 38, ¶ 7).

## THE PINN PATENTS

13. Google has infringed and continues to infringe one or more claims of Pinn's '491 Patent. Google has also practiced and continues to practice the claimed subject matter set forth in published claims of U.S. Pat. App. Ser. No. 15/563,937 (the "'937 App."). The '491 Patent and U.S. Patent No. 10,___,___ (which soon will issue from the '937 App.) may be referred to as the Patents in Suit or collectively as the Asserted Patents.

14. Generally speaking, the Asserted Patents claim methods, apparatuses, and systems relating to a personal wireless media station having a wireless earbud and main body, wherein the wireless earbud is capable of pairing with a device, such as a smartphone, to receive and play audio data, and is capable of connecting to an electric circuit in the main body, for wired communication with the main body when plugged into a connection hole of the main body.

15.     Pinn is the assignee of all right, title, and interest in and to each of the Asserted Patents and has the exclusive right to assert all causes of action arising under, or that may arise under, the Asserted Patents, including the right to pursue and recover any and all monetary and equitable remedies for infringement.

**The '491 Patent: "Electronic Device with Wireless Earbud"**

16.     On October 31, 2017, the United States Patent and Trademark Office ("USPTO") issued the '491 Patent following a full examination of U.S. Pat. App. Ser. No. 15/625,935, which was filed June 16, 2017, and claims priority to PCT App. No. PCT/US2016/025936 (filed April 4, 2016) and U.S. Prov. App. No. 62/142,978 (filed April 3, 2015).

17.     Exhibit A is a true and correct copy of the '491 Patent.

18.     The '491 Patent describes a personal wireless media station that includes a main body and wireless earbud.

19.     In reference to one disclosed embodiment, the '491 Patent describes an apparatus comprising a main body, a wireless earbud configured for plugging into a connection hole of the main body to form a single integrated body, a user input button, at least one processor, and at least one memory.

20.     Claim 1 of the '491 Patent recites:

1. An apparatus comprising:

a main body comprising a connection hole, a user input button, at least one processor and at least one memory; and
a wireless earbud configured for plugging into the connection hole of the main body to form a single integrated body with the main body,
wherein the wireless earbud has wireless communication capability for wirelessly pairing with a smartphone and is configured to receive audio data from the smartphone and to play audio using the audio data from the smartphone when wirelessly paired with the smartphone,

wherein in addition to wireless communication capability for wireless pairing with the smartphone, the wireless earbud comprises an earbud connector for connecting with an electric circuit of the main body for wired communication capability with the main body when plugged into the connection hole,

wherein, when wireless earbud is plugged into the connection hole, the wireless earbud is configured to perform wired two-way data communication with the main body,

wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory

for initiating the wireless pairing with the smartphone in response to pressing of the user input button provided on the main body,

for initiating battery charging of the wireless earbud in response to the wireless earbud's plugging into the connection hole, and

for turning off the wireless pairing with the smartphone when the wireless earbud is being charged.

21.    Figure 2 illustrates certain exemplary uses of an embodiment of the '491 Patent:



FIG.2

MODE 1                    MODE 2

22.     The technologies and innovations recited in the claims of the '491 Patent, including Claim 1, provide inventive concepts and do not claim an abstract idea.  The individual elements of the '491 Patent claims, including claim 1, were not well-understood, routine, or conventional to persons of skill in the art at the time of the invention.  Instead, the claims of the '491 Patent are directed to unconventional, inventive concepts that implement technical solutions to solve various problems, including problems unique to wireless earbud pairing, and that enhance the operation and functionality of wireless earbuds.  As one example, the '491 Patent provides a technical solution that eliminates the need to have unobstructed access to a smartphone's inputs and outputs and facilitates pairing between the smartphone and the wireless earbud.  *See, e.g.*, '491 Patent at 1:14-26.

23.     Technological solutions taught by the '491 Patent provide advantages over, and improvements to, the state of the art at the time.  For example, the teachings of the '491 Patent improve the performance of a wireless earbud system by simplifying the pairing process and by providing a mechanism for charging wireless earbuds when away from a traditional power source.

24.     The inventions and the limitations recited in the claims of the '491 Patent, whether alone or in combination with other limitations, embody a number of inventive concepts.  For example, claim 1 of the '491 Patent describes a consumer product or system featuring distributed intelligence and an earbud that communicates wirelessly with a smartphone and communicates via wired two-way communication with the main body.  The main body is configured to initiate wireless pairing with a smartphone when a user presses the input button on the main body.  When plugged into the connection holes, the wireless earbuds are configured such that the earbud batteries are charged by the main body and perform two-way data communication with the main body.  *See, e.g.*, '491 Patent at 1:45-49.

**U.S. Pat. App. Ser. No. 15/563,937: "Mobile System with Wireless Earbud"**

25.     Sean Kim filed the '937 App. on October 2, 2017, as a national stage

entry of PCT App. No. PCT/US2016/025936 (filed April 4, 2016), which claims priority to U.S. Prov. App. Nos. 62/199,943 (filed July 31, 2015) and 62/142,978 (filed April 3, 2015).

26. The USPTO published the '937 App. on May 10, 2018.

27. Since May 10, 2018, papers in the '937 App. file have been available to the public.

28. On August 28, 2019, the USPTO allowed claims 23-60 of the '937 App. (sometimes referred to as the "'937 App. Published Claims").

29. The August 28, 2019 Notice of Allowance is publicly available.

30. On September 3, 2019, Pinn paid the issue fee.

31. U.S. Pat. No. 10,___,___ will issue from the '937 App. with claims substantially identical to the '937 App. Published Claims listed in Exhibit B.

32. Original claim 23 of the '937 App. (final claim 1 in the patent to issue) recites:

> A mobile system comprising:
>
> a base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry; and
>
> a wireless earbud configured for plugging into the connection hole of the base station to form an integrated body with the base station,
>
> wherein the system is capable of wirelessly pairing with a smartphone for the wireless earbud to receive audio data originated from the smartphone,
>
> wherein, in response to pressing of the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data originated from the smartphone and plays audio using the audio data from the smartphone,
>
> wherein, in response to plugging the wireless earbud into the connection hole, the at least one processor is configured to execute computer program instructions

stored in the at least one memory to initiate charging of a battery of the wireless earbud,

wherein, when the wireless earbud is plugged into the connection hole of the base station, the wireless earbud is configured to electrically connect with the circuitry of the base station and further configured to performing wired data communication with the base station.

33.     The particular combination of elements in claim 23 of the '937 App. was not well-understood, routine, or conventional to persons of skill in the art at the time of the invention.     Instead, the '937 App. Published Claims are directed to unconventional, inventive concepts disclosed in the specification.

34.     Whether alone or in combination with other limitations, the claimed inventions and limitations recited in the '937 App. Published Claims embody a number of inventive concepts.  Claim 23, for example, describes, among other things, a mobile system having distributed intelligence.  The system enables wireless pairing of an earbud and smartphone in response to pressing a user input button and includes a base station featuring a connection hole into which an earbud is plugged for charging and wired data communication.

35.     For example, in one embodiment described in original claim 43 of the '937 App., "the at least one processor is configured to execute computer program instructions stored in the at least one memory to turn off the wireless pairing while the wireless earbud is being charged."

36.     As illustrated in Figure 1 (excerpted below), the earbud connector of the wireless earbud is mateable with the main body connector of the main body.  The specification further describes: "The wireless earbud and the main body form a single integrated body when the earbud connector and the main body connector are connected with each other."



**PINN, INC.**



37.    Pinn was founded by Seung Jin ("Sean") Kim in 2015, with a vision toward designing and developing wearable technology that enhances the smartphone experience and eliminates frustrating phone problems like trying to locate and retrieve your phone quickly to answer an incoming call.

38.    Pinn is headquartered, and Mr. Kim resides, in Irvine, California.

39.    Pinn's product inventory, company files, and documents relating to the Patents in Suit and claims in this lawsuit are located in Irvine.

40.    Sean Kim received a bachelor's degree in Music Composition and Orchestra Conduction from Seoul National University in 2003. In addition to being an accomplished composer, Mr. Kim is an entrepreneur and inventor.

41.    While serving as an IP and business consultant to Deca International Corporation, Mr. Kim developed and helped Deca commercialize a variety of GPS-based golf rangefinders, voice-based products, and laser-based rangefinders.

42.    After Deca, Mr. Kim worked with AQ Corporation, a mobile nearfield communication company. He assisted AQ in developing its intellectual property assets and helped direct AQ's research and development efforts. While at AQ, Mr.

Kim worked on the design of an interactive, event-specific digital signage platform for use on mobile devices, called Anniver.

43.     Recognizing the need for a personal media system with simplified operation and structure, Mr. Kim conceived of the Pinn device in 2014 and founded Pinn Inc. the following year to develop a first-generation wearable product that would provide consumers with an easier way to use their smartphones, by simplifying and enhancing the wireless capabilities and operation of the device.  Mr. Kim recognized that a system having distributed intelligence and processing, along with an integrated modular design, would improve ease of use and functionality.

44.     The USPTO recognized Mr. Kim's innovations by granting the first of his Pinn patents, the '491 Patent, in 2017.

45.     Pinn proved Mr. Kim's concept in October 2015 and successfully launched the Pinn product soon after.  Pinn became available to the public in 2017.



46.     Pinn includes a wireless earbud that is docked and integrated into the Pinn clip or main body.

47.    Pinn wirelessly connects to a user's smartphone via Bluetooth.



**GOOGLE'S PIXEL BUDS WITH CHARGING CASE**

48.    Google introduced the Google Pixel Buds in October 2017.

49.    Google advertised results from testing conducted on Pixel Buds in September 2017.

50.    Google Pixel Buds are sold with a case, as shown below.



51.     Google publishes the following description of the Pixel Buds:

# What are Google Pixel Buds?

Meet the Google Pixel Buds. Designed for high-quality audio as they fit comfortably in your ear.

## Google Pixel Buds

Google Pixel Buds are a pair of wireless earbuds that allow you to listen to media, answer calls, talk to your Assistant, translate languages, and express yourself through sleek design and intuitive controls.

Pixel Buds work best in a variety of settings including your daily commute, gym sessions, weekend walks, or even at home.

**Buy Now**



52.     Pixel Buds connect wirelessly to a compatible smartphone via Bluetooth.

53.     The Google Pixel Buds case features "magnetized pockets" for storing and charging the Pixel Bud earbuds.

## How to charge your Google Pixel Buds

Match the L & R indicators of the Pixel Buds to the charging case magnetized pockets.

Once they're in, press down to make sure the charging pins are firmly in place. After placing your earbuds in their pockets, secure the cord by wrapping it around the rim of the charging case so you can carry Pixel Buds while they are charging.



54.     The magnetized pockets formed in the Pixel Bud case are configured to

hold the earbuds firmly in place.



55.     The earbuds and case form a single integrated body when the earbuds are placed in their pockets.



56.     Google Pixel Buds have wireless capability for pairing with a

1    smartphone.

2        57.    Google published the following description of the Google Pixel Buds on

3    the Google website available at https://store.google.com/product/google_pixel_buds:



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    58.    Google Pixel Buds are configured to receive audio data from a wirelessly

24    paired smartphone.

25        59.    The image below shows a smartphone screen display indicating

26    successful pairing with the Google Pixel Buds:

27

28



60.     Each Google Pixel Buds earbud has two charging pins that electrically connect with contacts in the magnetized pockets of the case.

61.     The image below shows two electrical contacts in each magnetized pocket:



62.   The image below shows the charging pins (in red) on the Pixel Bud earbud:



63.   The Safety, Warranty & Regulatory Guide for Google Pixel Buds that is published by Google states: "The contacts in the charging case contain nickel and those contacts come in contact with the earbuds."

64.   The Safety, Warranty & Regulatory Guide for Google Pixel Buds provides the following statement describing the charging pin contacts on each wireless earbud:

**Materials**

Google Pixel Buds are made from plastics, polymers and stainless steel.  The charging pin contacts are gold plated copper alloy. The pockets within the charging case which hold the earbuds may be made from a material which contains brominated flame retardants.

https://support.google.com/googlepixelbuds/answer/7549807?hl=en.

65.   In normal charging operation, each Pixel Buds earbud connects to an electric circuit in the main body of the case.

66.   When the Pixel Buds earbuds are place in the case, a wired connection is made via the charging pins and the charging pin contacts in each magnetized pocket.

67.   When the Pixel Buds earbuds are placed in the magnetized pockets of the case, a wired connection between the case and the earbuds enables two-way data communication between the case and the earbuds.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

68.     The Pixel Buds case features a user input button shown below:



69.     In normal charging operation, the Pixel Buds earbuds receive a charging signal via wired connection between the case and earbuds.

70.     Google published the following description of the case:

# The Google Pixel Buds Charging Case

The charging case for the Google Pixel Buds is a sleek and lightweight way to carry your earbuds when you're not using them.

**Note:** Charge safely. Before charging, please make sure that you read and follow the safety information about charging Google PIxel Buds at https://g.co/pixelbuds/SafetyInfo or in the 'Be Safe' guide included with your Google Pixel Buds.

Your charging case allows you to pair your Pixel Buds with your phone, check the battery levels of both your case and Pixel Buds and recharge your Pixel Buds when they're low on power. Along with up to five hours of listening time that you'll get from a single charge on your Pixel Buds, the charging case holds multiple additional charges. If the charging case is also fully charged, altogether, you'll receive up to 24 hours of listening time.

71.    The Google Pixel Buds case comprises at least one processor and memory.



72.    At least one processor of the Pixel Buds case main body (e.g., the Active-Semi ACT2801 chip shown in the picture above) is configured to execute instructions for initiating battery charging of the wireless earbuds in response to the earbuds being placed in their pockets.

## How to charge your Google Pixel Buds

Match the L & R indicators of the Pixel Buds to the charging case magnetized pockets.

Once they're in, press down to make sure the charging pins are firmly in place. After placing your earbuds in their pockets, secure the cord by wrapping it around the rim of the charging case so you can carry Pixel Buds while they are charging.

73.    A green LED light appears, indicating that the Pixel Buds are charging.

A green LED light will appear, indicating that your Pixel Buds are charging.



74.    At least one processor in the Pixel Buds case main body is configured to execute instructions for initiating Bluetooth pairing in response to pressing the user input button.

75.    Google published the following instructions for wirelessly pairing the Google Pixel Buds with a smartphone:

### Step 2. Manually pair Google Pixel Buds

1. On your mobile device's Bluetooth menu, tap on the Google Pixel Buds headphones to pair them with your phone.
2. Hold the **case button for 3 seconds**; if you see one white LED pulsing ⬤▬, your device is ready to pair.
3. Look for a pop-up notification on your phone that will take you through the rest of setup.
4. On certain Android devices, you may need to look for your Google Pixel Buds in the Bluetooth setting menu and add them as a new device.

76.    At least one processor of the Pixel Buds case main body is configured to execute instructions for turning off Bluetooth pairing during charging.

77.    Instructions executed by the processor(s) in the charging case are stored in memory located in the main body of the charging case.

78.    Google's Pixel Buds are configured to provide battery status to a smartphone for display on a mobile application of the smartphone.



## How to check the battery level of your Pixel Buds

### Bluetooth settings (Requires a Pixel 2 or Pixel 2 XL phone)

### Headphones settings in Google Assistant



1. Press and hold the center button on your phone to invoke your Google Assistant

2. Tap on ⬀ Headphones Settings



79.    Google publishes how-to instructions and encourages users to check battery level and pair Google Pixel Buds with a compatible smartphone.

80.    Google Pixel Buds earbuds are incapable of wirelessly communicating with the case.

81.    When the Google Pixel Buds earbuds are wirelessly paired with a compatible smartphone (e.g., Google Pixel 2), a mobile application of the smartphone may be used to control various functions such as volume adjustment.

### Basic Voice Commands

- *"Play some pop music"*
- *"Louder / Quieter"*
- *Increase / Decrease Volume"*
- *"Next"*
- *"Stop / Start"*
- *"Tell me the latest news"*

82.     When the Google Pixel Buds are wirelessly paired with a compatible smartphone (e.g., Google Pixel 2), the system comprising the wireless earbuds and smartphone is configured to enable control of functions by a mobile application on the smartphone (e.g., Google Assistant).

83.     Google publishes the following instructions for using Pixel Buds with the Google Assistant mobile application:

## Request Media

**Touch & hold** the right earbud while you talk to request media.

Example: *"Play rock music"*

 If you haven't chosen a preferred media service, your Google Assistant will ask you to select a service the first time you request music and then it will begin playing your media. For more information on selecting a preferred music service, go here. Subscriptions and fees may apply.

Music service supported by the Google Assistant include:

- Google Play Music
- Spotify
- YouTube
- YouTube Music

Radio services supported by the Google Assistant include:

- iHeartRadio
- TuneIn

## Basic Voice Commands

- *"Play some pop music"*
- *"Louder / Quieter"*
- *Increase / Decrease Volume"*
- *"Next"*
- *"Stop / Start"*
- *"Tell me the latest news"*

84.     Google sells Pixel Buds wireless earbuds with a charging case base station that includes connection holes for plugging in the earbuds, a user input button for initiating pairing and other functions, processors, memory, and circuitry for charging and controlling Bluetooth communication and two-way data communication

between the earbuds and charging case.

**NOTICE**

85.    In October of 2016, on behalf of Pinn, Mr. Kim contacted Google by e-mail and provided information about Pinn, its technology, and the inventions claimed in the Patents in Suit.

86.    In emails to Ryan Beauchamp (Google Product Manager), Brian Rakowski (Vice President of Product Management), M G Siegler (General Partner, Google Ventures), Sarah Xie (Manager, Mobile Apps Partnership), and Hector Balasch (Sr. Strategic Partner Manager), Mr. Kim provided details about Pinn, Inc., a link to Pinn's website, and documentation about the Pinn technology.

87.    Mr. Kim provided a list of Pinn's intellectual property assets at the time and specifically identified the pending application from which the '491 Patent issued:



## IP Portfolio

- US Patent Application (Utility) – 62/142,978
- US Patent Application (Utility) – 62/199,943
- PCT Application (Utility – Merged above 2 applications) – PCT/US2016/025936
- US Patent Application (Design) – 29/534,923
- US Patent Application (Utility) – 62/318,146
- Trademark Application – 86/761,666 (Issued)
- A New US Patent Application (Utility) is preparing for filing on November, 2016

Pinn Inc.                                                                    www.mypinn.com

88.    Google has been aware of Pinn's '491 Patent since at least the date it was cited during prosecution of Google's later-filed patent applications.  Google filed U.S. Application Ser. No. 16/237,947, on January 2, 2019, which relates to certain features of the Google Pixel Buds.

89.    After receiving Mr. Kim's e-mails and before the USPTO published

Google's '947 Application, Google identified Pinn's foreign patent application by listing publication no. 2016/161454 on an invention disclosure statement submitted to the Patent Examiner on April 12, 2019.

90.    The excerpt below is from the invention disclosure statement submitted to the USPTO in connection with Google's own patent application:

**FOREIGN PATENT DOCUMENTS** | | | | | | | Remove |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2016161454 | WO | A1 | 2016-10-06 | Pinn, Inc | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button     Add

91.    The image below is from Pinn's international patent application that Google identified to the USPTO:



92.    Pinn's '491 Patent is a continuation of International Application No. PCT/US2016/025936.

93.    Google had knowledge of International Application No. PCT/US2016/025936 at least as early as April 12, 2019.

94.     Adam Champy is named as a co-inventor on Google's '947 Patent Application that references Pinn's patent application.  He also is Product Manager for Google Pixel Buds.

95.     Pinn has complied with 35 U.S.C. § 287.

**COUNT 1: DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,807,491**

96.     Pinn realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if set forth here in full.

97.     As the owner of the '491 Patent, Pinn holds all substantial rights in and to the '491 Patent, including the right to exclude others from practicing its patented inventions, the right to enforce the '491 Patent, and the right to sue and recover damages for infringement of, the '491 Patent.

98.     Google has no authority or license to practice the inventions claimed in the '491 Patent.

99.     The '491 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination by the USPTO.

100.   Google has infringed and continues to infringe at least claims 1, 9, and 10 of the '491 Patent by, among other things, making, using, selling, and offering for sale in the United States, and/or importing into the United States – without license or authority – products, devices, or systems, including Google Pixel Buds (the "Accused Products") that fall within the scope of one or more claims of the '491 Patent in violation of at least 35 U.S.C. § 271(a).

101.   Google's infringing conduct has been, and continues to be, willful, intentional, and carried out with actual knowledge of the '491 Patent.

102.   Since receiving notice of the '491 Patent, Google has continued to perform acts of infringement and has taken no steps to modify the Accused Products to avoid infringement or to instruct end users and customers how to use the Accused Products in a way that avoids infringement.

103.   As a result of Google's past infringing conduct, Google is liable to Pinn in an amount that adequately compensates it for Google's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

104.   As a result of Google's ongoing infringing conduct described in this Count, Pinn will continue to be damaged unless Google is enjoined from further infringement.

## COUNT 2: INDIRECT INFRINGEMENT OF U.S. PATENT NO. 9,807,491

105.   Plaintiff realleges and incorporates by reference the factual allegations set forth in the preceding paragraphs as if set forth here in full.

106.   Google is liable for indirect infringement of at least claims 1, 9, and 10 of the '491 Patent by knowingly encouraging, aiding, and directing others (e.g., end users and customers) to use and operate the Accused Products in an infringing manner and to perform the claimed methods of the '491 Patent.

107.   Google has actual knowledge of Pinn's '491 Patent and has been and is on notice of the '491 Patent, the Accused Products that infringe the '491 Patent, and the manner in which such products infringe.

108.   Google encourages, directs, aids, and abets the use, assembly, configuration, and installation of the Accused Products.

109.   Google provides to end users and customers products and components having no substantial non-infringing uses and intends them to be combined with a smartphone or other system components to infringe the '491 Patent.

110.   Google specifically intends the Accused Products to be used and operated to infringe one or more claims of the '491 Patent.

111.   By providing manuals, advertising, instructional documentation and videos, and technical support, Google encourages and instructs end users and customers to use and operate the Accused Products in an infringing manner.

112.   For example, despite having knowledge of the '491 Patent, Google has

provided, and continues to provide, instructional materials, such as user guides, owner manuals, and online resources (e.g., https://support.google.com/googlepixelbuds) that teach and encourage customers and other end users to use the Accused Products in an infringing manner. Google actively induces infringement of the '491 Patent.

113. The Accused Products include hardware components and software instructions that operate in concert to perform specific, intended functions that constitute material parts of the inventions claimed in the '491 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

114. For example, the Accused Products include circuitry configured to operate in combination with software instructions to perform specific functions, such as pairing, playing audio data received from a smartphone, and initiating charging of wireless earbuds, as claimed in the '491 Patent. Such hardware and software have no substantial non-infringing use.

115. Google's infringing conduct has been and continues to be willful, intentional, and carried out with actual knowledge of the '491 Patent.

116. Since receiving notice of the '491 Patent, Google has continued to perform acts of indirect infringement and has taken no steps to modify the Accused Products or to instruct end users or customers how to use the Accused Products in a way to avoid infringement.

117. As a result of Google's past infringing conduct, Google is liable to Pinn in an amount that adequately compensates it for Google's infringement, which by law can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

118. As a result of Google's ongoing infringing conduct described in this Count, Pinn will continue to be damaged unless Google is enjoined from further infringement.

## COUNT 3: NOTICE OF CLAIMS OF U.S. APP. SER. NO. 15/563,937

119.   Pinn realleges and incorporates by reference the factual allegations set forth in the preceding paragraphs as if set forth here in full.

120.   Pinn is the owner, by assignment, of the '937 App. and holds all substantial rights in and to the '937 App., including the right to enforce any patent that may issue therefrom and the right to pursue and recover all infringement damages that may flow from infringement of any such patent.

121.   The Patent Office published the '937 App. on May 10, 2018.

122.   The Patent Office allowed Claims 23-60 of the '937 App. on August 28, 2019.

123.   Claims 23-60 will issue in a form substantially identical to those shown in Exhibit B.

124.   The '937 App., Claims 23-60, will issue in full compliance with Title 35 of the United States Code.

125.   Google has practiced and is currently practicing at least allowed claims 23, 24, 26, 28, and 30 of the '937 App. by, among other things, making, using, selling, and offering for sale in the United States, and/or importing in to the United States, products, devices, or systems including the Accused Products, that fall within the scope of these claims.

126.   Upon issuance of U.S. Patent No. 10,___,___ from the '937 App., Google will be infringing, directly and indirectly, at least claims 23, 24, 26 and 28.

127.   Upon issuance of the patent, Google's conduct will constitute infringement.

128.   Upon issuance of the patent, Google's infringing conduct will entitle Pinn to damages that adequately compensate Plaintiff for Google's conduct, including damages in an amount no less than a reasonable royalty, together with interest and costs as fixed by this Court.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

129.   Google is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Google knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter, "Potential Evidence").  As used above, the phrase "electronically stored information" includes, without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Pixels, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees, if Defendant's electronically stored information resides there.

130.   Google is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that

the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## PRAYER FOR RELIEF

Pinn prays for the following relief:

(i)    Judgment that Google has directly infringed the '491 Patent;

(ii)   Judgment that Google has indirectly infringed the '491 Patent;

(iii)  Judgment that the '491 Patent is valid and enforceable;

(iv)   An award of damages adequate to compensate Pinn for Google's direct and indirect infringement up to and including the date such judgment is entered, to the full extent damages are available under 35 U.S.C. §§ 154(d), 284, or otherwise, along with prejudgment and post-judgment interest at the highest allowable rates;

(v)    An award of enhanced and/or treble damages, pursuant to 35 U.S.C. § 284;

(vi)   Judgment that this case is exceptional, along with a corresponding award of reasonable attorney fees, pursuant to 35 U.S.C. § 285;

(vii)  Costs and disbursements, pursuant to Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, 35 U.S.C. § 284, or otherwise;

(viii) An accounting;

(ix)   A permanent injunction, or, alternatively (if the Court declines to grant injunctive relief), and to the extent calculable, damages adequate to compensate Pinn for Google's ongoing or future infringement; and

(x)    Such other and further relief, whether at law or in equity, as the Court deems just and proper.

1

## **DEMAND FOR JURY TRIAL**

2      Pinn demands trial by jury for all issues so triable pursuant to Fed. R. Civ. P.

3   38(b) and Civil L.R. 3-6(a).

4

5      Dated: September 25, 2019        By  */s/ Ryan E. Hatch*

6                                       Ryan E. Hatch
                                        California Bar No. 235577
7                                       ryan@ryanehatch.com
                                        Law Office of Ryan E. Hatch, P.C.
8                                       13323 Washington Blvd., Suite 100
                                        Los Angeles, CA 90066
9                                       Telephone: 310-279-5076

10

                                        David A. Skeels (*pro hac vice* forthcoming)
11                                      Texas Bar No. 24041925
                                        dskeels@whitakerchalk.com
12                                      Enrique Sanchez, Jr. (*pro hac vice* forthcoming)
                                        Texas Bar No. 24068961
13                                      WHITAKER CHALK SWINDLE &
                                        SCHWARTZ PLLC
14                                      301 Commerce Street, Suite 3500
                                        Fort Worth, Texas 76102
15                                      Telephone: (817) 878-0500
                                        Facsimile: (817) 878-0501
16

17                                      Cabrach J. Connor (*pro hac vice* forthcoming)
                                        Texas Bar No. 24036390
18                                      cab@connorkudlaclee.com
                                        Jennifer Tatum Lee (*pro hac vice* forthcoming)
19                                      Texas Bar No. 24046950
                                        jennifer@connorkudlaclee.com
20                                      Kevin S. Kudlac (*pro hac vice* forthcoming)
                                        Texas Bar No. 00790089
21                                      kevin@connorkudlaclee.com
                                        **CONNOR KUDLAC LEE PLLC**
22                                      609 Castle Ridge Road, Suite 450
                                        Austin, Texas 78746
23                                      Telephone:  (512) 777-1254
                                        Facsimile:  (888) 387-1134
24

25                                      *Attorneys for Plaintiff*
                                        Pinn, Inc.
26

27

28